NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 21 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> JAMES DEVLIN CROMBIE, <br><br> Defendant-Appellant, <br><br> and <br><br> PARON CAPITAL MANAGEMENT, LLC, <br><br> Defendant, <br><br> TIMOTHY W. HOFFMAN, <br><br> Trustee. | No. 19-16190 <br><br> D.C. No. 4:11-cv-04577-CW <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted September 1, 2021
Pasadena, California

Before: IKUTA, BENNETT, and R. NELSON, Circuit Judges.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendant-Appellant James Crombie appeals the reinstatement of two provisions of a permanent injunction originally imposed in 2013 due to his violations of the Commodity Exchange Act ("CEA"). The first provision, Section 5(b), permanently enjoins Crombie from "[e]ntering into any transactions involving commodity futures, options on commodity futures, commodity options . . . , security futures products, swaps . . . , and/or foreign currency . . . for his own personal account or for any account in which he has a direct or indirect interest." The second provision, Section 5(c), permanently enjoins Crombie from "[h]aving any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded on his behalf." The district court justified its imposition of these two provisions, after a prior panel of our court remanded for further explanation of their connection "to preventing future violations similar to those that Crombie has committed." *U.S. Commodity Futures Trading Comm'n v. Crombie*, 914 F.3d 1208, 1218 (9th Cir. 2019). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

"We review the remedies issued by a district court for an abuse of discretion." *Id.* at 1215. Although "[a]n overbroad injunction is an abuse of discretion," *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (citation omitted), the district court adequately explained why Sections 5(b) and 5(c) are necessary to

prevent future violations almost identical to those that Crombie already committed.[1]

Crombie complains that the district court's concerns are speculative, but the district court could issue a permanent injunction "preventing future violations *similar* to those that Crombie has committed"—not necessarily identical. *Crombie*, 914 F.3d at 1218 (emphasis added).

Crombie also argues that Sections 5(b) and 5(c) are unnecessary because Section 5(e) of the permanent injunction already "prohibits Crombie from doing what the district court said it feared: 'Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures[.]'" But this argument wrongly assumes that Crombie will obey Section 5(e) or that the Commission will immediately discover if he does not.

Crombie also insists that the district court could not impose a personal trading ban like the one in Section 5(b) because he did not (1) misappropriate client funds, (2) deceive clients directly, or (3) refuse to promise to abide by the law in the future. But we have never held that those are the only three circumstances to warrant a personal trading ban, and even if they were, a previous panel of our court has already

---

[1] The parties agree that on remand, the district court explained that Sections 5(b) and 5(c) are necessary because without them, "Crombie could 'create falsified documents to solicit funds from customers,' take the money, put it into his trading account [or the account of a third party acting on Crombie's behalf], and then execute trades for his customers." Appellant's Opening Br. at 30. With those concerns in mind, the district court reimposed Sections 5(b) and 5(c).

affirmed the district court's finding that Crombie willfully deceived his clients, *see Crombie*, 914 F.3d at 1213–15. Crombie's attempt to distinguish his case from other client deception cases because his deception was less direct was already rejected in our prior decision affirming summary judgment and most of the permanent injunction. *See id.* at 1215.

Finally, Crombie argues that the district court abused its discretion by imposing Sections 5(b) and 5(c) for life. But he has failed to show that an injunction will someday be unnecessary to ensure his compliance with the CEA. He notes that the Commission has established a presumption that personal trading bans are appropriate for felons convicted under 7 U.S.C. § 13 for a minimum period of five years and argues that "[i]f the presumption for a *felony* conviction is a five-year trading ban, . . . at the very least a lifetime ban should not be imposed lightly in a civil case." But administrative sanctions under § 13(b), like permanent injunctions under § 13a-1, are remedial, not punitive. *See Lawrence v. Commodity Futures Trading Comm'n*, 759 F.2d 767, 774 (9th Cir. 1985) (characterizing the CEA and sanctions issued thereunder as "remedial"). Thus, there is no reason to impose presumptively shorter trading bans on civil rather than criminal defendants, and just as we may uphold permanent personal trading bans against felons, so too may we uphold a permanent personal trading ban against a defendant in a civil enforcement

action when supported by the facts.[2]

**AFFIRMED.**[3]

---

[2] Of course, if future circumstances no longer support a permanent personal trading ban against Crombie (or a permanent ban on third parties trading on his behalf), Crombie can move to lift or modify Sections 5(b) and 5(c) in the district court. *See Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995).

[3] Crombie's motion to compel the release of all grand jury materials is denied. *See* Dkt. No. 18.